I'm John Ward. I'm here on behalf of Mr. Reay. Thank you, counsel. Unless the Court wants to go elsewhere, I'd like to focus on three points. Two claims that I think that the California court of appeal didn't fully reach and that, therefore, calls into question the normal AEDPA standard. And thirdly, the issue of whether or not the idea floated in Respondent's Brief that actually Mr. Reay didn't have an alibi at all. Didn't have what? Did not have an alibi at all. The first claim that I'd like to address is the severance claim. And in his opening brief in State court, Mr. Reay's attorney proposed two reasons for reversal. The spillover effect of the terrible, fattered wife syndrome evidence that came in against him in a joint trial. And secondly, antagonistic defenses. And the California court of appeal reached the first, but not the second. So as I read this Court's decision in Lewis v. Male, under those circumstances where the State court addresses a claim but does not fully address it, then this Court is not bound by the clearly or by the, let's just call it the AEDPA standard. We have these cases, Hines and Delgado, that says if the State court has adjudicated a claim on the merits, and we define adjudicated on the merits to mean that the claim was before the State court and the State court didn't hold that it was procedurally barred. So even if the State court doesn't address it, it's considered adjudicated on the merits, and AEDPA deference applies. Well, that's what's interesting, because in Lewis v. Male, the actual issue before the Court was whether or not there was a counsel of conflict. And the State court of appeal considered it but refused to initially consider the waiver prelude to that. And this Court said that under those circumstances, it recognized Delgado and said we're not bound by the Delgado standard in this case because the court addressed the claim but did not fully address it. And I think that's the situation here. Where the State court says nothing, in other words, where you get a postcard denial or whatever, then this Court's job is to look at the record independently and decide whether or not the State court's decision was reasonable. But where, as I say, as I read Male, Lewis v. Male, where the State court was not bound by the on-bank decision in France that I actually wrote, which says something similar. But this seems to be cutting it awfully fine, i.e., they did, in fact, decide to address the issue. And the difference between the argument that they reached and the argument they didn't narrow, because the antagonistic defense was essentially that I was a battered woman and he made me do it. So there's not like a big divide between the two of them. Well, I mean, there is in the sense that he says I wasn't there, and both couldn't be true. Well, yes, but the reason why he was objecting to the evidence that he was battering her was because that made them more likely to believe that he was there. Well, but, I mean, there's sort of a need to be clear about that. I'm not sure I see the division that you're talking about. Well, I mean, the law of antagonistic defense is quite a distinct body of law from the law of spillover and severance. But it's not a very favorable one, either. Well, it's a tough standard to meet, Your Honor, but not quite as tough as Edpa. I mean, obviously, I would like you to review this de novo. And as a fallback, of course, I would say that the State court was unreasonable in the sense that your case in Mayfield says that where one defense cannot be believed if the other cannot, it's very – I think you follow my – then you have an antagonistic defense that requires severance. Which case is that you're allying? It's Mayfield. I don't even like reading. I see. Okay. Have you got it? I think it's in the table of contents. Okay. It feels like I've said my piece on that one. The second one that I feel that the Court didn't fully reach is the whole business of the juror. I'm sorry? The whole business of the juror. I'm sorry. I don't have too much of a voice this morning. I'll do it in a second. And I found that quite troubling in the sense that, first of all, counsel did in his opening brief, and I think I should have but did not include this in the excerpts, but in his opening brief, he argued that she was dishonest. This is the juror who began to weep during deliberations. He argued that she was dishonest in her – in voir dire. And then he adds a second argument, which is basically implied – implied bias. He cites the California case of People v. Diaz, which holds that even in the absence of dishonesty, if as an objective matter, a juror is so emotionally involved in the situation that she can't be fair, that she should be excused. And that also, the State court did not address. And I'm certainly aware of the Brown case, and the – Well, what – the wife was convicted in this case, a first-degree murder of Nettie, was she not? Yes, she was, yes. So it doesn't sound like anybody particularly believed her battered wife syndrome theory anyway. Well, you know, the question is whether or not – they may – they may not have believed that, but once they heard all that stuff, how are they going to – I mean, the facts of this case – I know, but as relates to the juror in this context, it doesn't – it doesn't seem – Oh, I see what you mean. Well, if she – I guess the fact is that, you know, I think in cases of bias, you don't look to whether there was overwhelming evidence or blah, blah, blah. You look to the objective question of whether a person in that situation could look at it. Apparently so, because she – she didn't, in fact, vote to absolve this woman because of her battered woman syndrome. That's, I think – She didn't believe her because she didn't think it was exonerating. Well, I think maybe she didn't believe her because she – she was so upset by the battered woman stuff. You know, that it was impossible – in other words, he's still entitled to – he and she are both still entitled to a rational verdict based on the evidence. And if you have a woman that is so upset by what happened that at least two jurors thought that she couldn't be fair, then I think you've got a problem. You know, and I think the test is not the jury verdict, but this very sort of – The problem is that there's such a difficult – the trial judge is in such a bad position when jurors come up, especially when it's a divided opinion like this, because if he does take her off the jury, obviously there's going to be a claim about that. That never goes anywhere in the California Supreme Court. But, okay, yes, there is a problem. But it's actually more troublesome in many ways. It's more – it's – Because it appears to – and it appeared in this instance to have something to do with a fear of a hung jury. Yeah. But then, I mean, on the other hand, so be it. If she is disabled, you know, I mean, you really ought to call a spade a spade. And I think this is a – amongst the cases that I've seen over the years, this is one that stands out just a bit in the sense that she was pretty troubled. And she was pretty troubled about the same thing. Can I ask a question on that to go back to the other issue? DeGraff testified, right? The testimony doesn't seem to be in the excerpt of the record, or at least I couldn't find it. Yeah. So I didn't have much sense of what it was that he said. He said what she said, basically. I mean, he was a corroborating witness. He was a – I think he was immunized. I'm not – my colleague can probably verify that one way or the other, but he was a very important prosecution – prosecution witness. So why doesn't that absolve an awful lot of the problem with the joint trial? Because you still have all that bad stuff that comes in. And it's horrendous stuff, you know. I mean, he's pushing her around, he's doing this, he's doing that. I mean, they didn't have to buy it in order to completely dirty him. He had an alibi, you know. I mean, he may have been all those things, but he was entitled to a verdict on his alibi. That's the argument. And the other thing is, what stage in the preliminary, like the pretrial proceedings in the superior court, would it have been apparent to counsel that there would be a problem of the joint trial? Well, he actually raised it pretrial. And it was – In the preliminary hearing? Yes, he did. Was that gone over with the presiding judge at that time as to why? The judge denied the motion. He said he didn't think that the defenses were sufficiently antagonistic. The way it works in California – You can't claim inadequate representation. No. Because that was brought up thoroughly. Correct. Correct. And then the way it works in California is that the court is supposed to take a second look after the proceedings and determine whether or not there was unfairness. The court of appeals held that this was not terribly prejudicial, all the stuff about him being a battering person and the wife being a batterer or the woman being a battered victim is sort of like saying he also is ugly or he also has bad breath. It was not – in light of the whole story of what happened that night, his being a bully around women didn't seem to be much – add much to the case, did it? That's what the court said. I know. As I get older, I ask. If that's what they thought, why – why does that violate – what part of the Constitution does that violate? Well, I mean, I suppose in the end, all these are judgment calls. As I get older myself, I find all of this stuff much more horrifying than I used to. But I don't think, you know, that beating on this woman and forcing her, as she claimed to do this incredibly evil thing, is like bad breath. You know, I mean, I think this is – But there was other evidence that he battered somebody else. There was. And that wouldn't have come in. It did come in. I know, but it wouldn't have come in in a severed trial. Why is that? Because – because it wouldn't be other crimes of domestic violence in another trial. I think the theory, as I recall, that it came in – the reason it came in in this trial was it was evidence of – since she was claiming domestic violence, other than that, the – it was similar to the crime. Oh, right. It was – you're correct. And I – yeah, you're correct about that. So it would have come in anyway. Well, yeah. I think that was a wrong discernment. I don't think there were enough, but, I mean, I can't argue that here. I don't think there were enough distinguishing marks, but I can't argue that. All right. But it did come in on that theory. I have to say yes. It could have come in anyway. So that's another reason why it's – I mean, the problem here is that it's – it does seem that there – he may have been disadvantaged. The question was, was he sufficiently disadvantaged? Yeah. And I think under De Novo, I mean, that's why – Yeah. But you see, then you get – that's why the de Graaf thing seems to me to matter. Because you talk about inconsistent antagonistic defenses, but in fact, there was another person saying exactly the same thing. Well, not exactly, but, I mean, he – let's say he corroborated. So he would have been there anyway saying the same thing. Yeah. So it's – you know, this is a little uphill. I think that what would tip the scale my way is the degree of the disadvantage and the degree of the disparity between the two defenses. And then just very briefly – Which case are you relying on? I mean, whether – I don't see a De Novo review. I see that only if the state court used the wrong reasoning. But we're still bound by Supreme Court precedent. And Zafiro at least says that it's a serious risk that a joint trial would compromise a specific trial right, which the court defines fairly narrowly, or prevent the jury from making a reliable judgment about guilt or innocence. Are you saying that the evidence that the state court found was minor compared to the facts of the crime, that the admission of that would prevent the jury from making a reliable judgment about guilt or innocence? Yes. Yes. And is there a case that's analogous to this one that you're relying on? Not that I – not that I found, no. Finally, just to very quickly put paid to the idea that somehow this doesn't matter because he didn't have an alibi, the state court does say that one of the other witnesses put the time of death early on August 15th when he would not have had an alibi. However, the two medical examiners estimate the time of death at, in one case, 12 to 14 hours before the body was found on the 16th, and in another case, 24 to 36 hours, which would give him an alibi. So that question was open to the jury. Unless you have other questions, I think that does it. Thank you very much. You're welcome. I notice I have a few minutes left. You do. You have four and a half or so. I may not need. Thank you. Good morning. May it please the Court. Christina Hitomi Simpson on behalf of the Respondent. First, I'd like to start by addressing the Court's recent decision in Hawley v. Yarborough. It was a case that came out from this Court after a briefing was initially filed, and it held that the principle that the admission of evidence may violate due process if it renders a trial fundamentally unfair does not confer a right that has been clearly established by the Supreme Court as required by AEDPA. This case is relevant to the issues raised here regarding the admission of the battered woman syndrome evidence, essentially claims 1, 2, 3, 6, and 7. Under Section 2254D1, because there is no clearly established federal law ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant habeas relief here. So, therefore, relief on these claims, which essentially address the issue of whether or not the evidence should have been admitted, do not provide grounds for relief. That wouldn't be a finding on us if we were reviewing in DeNovo. Do you want to address— Certainly. —the claim to that on that point? There's no basis for DeNovo review here. These claims were all addressed on the merits by the state court. As for the argument about the antagonistic defenses in claim 1, that claim was raised before the state court and was decided on the merits, although it didn't specifically mention the antagonistic defenses. I believe you mentioned the case Delgado, where you can look through the state court's decision to conclude that it was decided on the merits. In any event, the definition of mutually antagonistic defenses does not—Nettie and Travis's defenses were not mutually antagonistic in this case. They certainly were mutually antagonistic. The question is, does it matter? How could they not have been mutually antagonistic? She said that he told her to kill this person, and he says he wasn't there and had nothing to do with it. Well, I believe the standard was that the acceptance of one defense does not necessarily preclude the acceptance of the other. And here, Nettie's defense was that she was a battered woman, and therefore she acted out of fear rather than malice. It went to her state of mind. But her specific story was that he was there telling her what to do. But I believe that still, you could still—the jury could have still believed her defense. They could have still found that she was a battered woman and, therefore, not guilty of murder, but on the same thing, also have found Travis guilty. It seems very difficult. Okay. Well, in any event, there was no resulting prejudice. Because he would have—if he weren't anywhere around, her battered—she could have been in the abstract a battered woman, but it wouldn't have been a defense to the crime, if he wasn't somehow ordering her to do the crime and involved in the crime. So there's just no way. Okay. But in any event, the evidence of the battered woman syndrome was not only limited. It was—a lot of that evidence was used by Travis Rhea in support of his defense, that Nettie was lying about the entire thing. Travis presented the alibi defense, and in response to Nettie's testimony, he said that she and Scott DeGraff actually were the two participants in Angel Dixon's murder. And so, therefore, this battered woman syndrome evidence, although potentially prejudicial to him, turned out to be advantageous because he was able to use it to argue that she was a lying, vengeful former spouse, that she had lost custody of her child to him, and that that was why she made up all of these basically statements against him. And in addition, any potential prejudice from the admission of the evidence was mitigated by the fact that a limiting instruction was given by the trial court, which specifically told the jury that the battered woman syndrome evidence could only be used for determining It really wasn't much of an instruction, and I don't even think it said only. It didn't say it couldn't be used for anything else, and it didn't say – it was a fairly weak version. It did state that the evidence was to be used for assessing Nettie's credibility. Only for, and it didn't say don't use it for anything else, and it didn't – it wasn't really a limiting instruction. But there's no evidence here that the jury misunderstood the instruction and misused it. There really wasn't a limiting instruction. Well, there was a – there was also – it did tell the jury to consider each defendant separately, and that each defendant was entitled to an individual determination of whether he or she was a member of the conspiracy. The limiting instruction, although not, you know, in depth, did address the issue and did instruct the jury as to how to use the evidence here. And then as to the other issue that she addressed, the juror misconduct issue, on this issue, juror number two had a history of childhood experiences with domestic violence. However, she repeatedly assured the court that she had received counseling for her prior history and that she was able to be impartial, that she would be able to decide the case on the merits and not be influenced by her prior experience. But she didn't contest the account that she had become extremely upset and that she had told the jurors this whole story of her background and was crying and stuff like that. That's true. But from my reading of the record, I gathered that she was most upset that she was crying, I believe, based on the way the other jurors had treated her, not an emotional response to the evidence here. Although she had a history with domestic violence, that was not what made her emotionally upset in deliberations. Well, what's our standard for reviewing this under EDCA? Is this a 20-42 factual finding issue, or is it something else? So the trial court concluded that there was no misconduct or misrepresentation or fear. Yes. This case was also decided by the state court and was rejected on the merits, and that decision was not contrary to an unreasonable application of Supreme Court precedent. Was that a legal determination or an actual determination? I believe here it was both. It was a legal determination, the state court's decision. But additionally, the court assessed the facts, and under 2254d-2, the court's decision was not the alleged misconduct of juror number two did not have a substantial or injurious effect or influence on the verdict. So relief isn't warranted under either section here. What about the notion that the court didn't reach an implicit bias question? Okay. We believe that the court first originally found that there was no actual bias, and then on the issue of implied bias, they did not find any implied bias here. But in the event that the court wants to decide the implied bias issue, this is not an extraordinary case where the court should have implied bias. Juror number two here had received counseling for her domestic violence experiences, and the question is whether or not an average person in the position of the juror in controversy would be prejudiced. And here, an average juror would not have been prejudiced because this juror, her experiences were distant in time. I believe it was Gonzales' case this Court decided that. Are you arguing that we should review the issue of de novo? Are you arguing that it's okay? No, no, no, no. Are we doing a de novo review of implied bias, or are we still under AEDPA? We are still under AEDPA. And the question would be, what's the Supreme Court case that holds implied bias? Would it be Irvin v. Dowd? But aside from that, why are we doing it under? In fact, the district the court of appeals opinion doesn't seem to address implied bias, does it? No, it does not. So then why are we under AEDPA? Was it raised to the State court? Was this issue of implied bias raised to the State court? The issue was generally raised. I don't know. I'm not certain if implied bias was raised. And did the State court? So you don't know whether it was raised or not? No, Your Honor. But on the issue of implied bias, here, juror number two's childhood experiences with domestic violence on the part of her father were unrelated to the murder charge. So if we address that, I just don't think. Were unrelated because? Because here, Dixon, that we were addressing a murder, the murder of Dixon  which was juror number two's background was relevant to Nettie's defense, not to Travis's guilt on the underlying murder. I see. If there's no further questions, anyone to submit? Thank you very much. Just briefly, I think, first of all, I was a little bit too complacent about Mr. DeGraff. I think, you know, it is important to bear in mind that he was an immunized witness and an accomplice. So, you know, that's something to put into the equation. The second thing I want to talk about is implied bias. Unfortunately, I didn't put it in the excerpt. I wish I had. But in the opening brief of defense counsel in the State court, as I say, he dealt with he first claimed that she was dishonest and voir dire. And then as a backup position, he said, he cited this California case, People v. Diaz, a 1984 case, that talks about even in the absence of dishonesty, there can be implied bias. Okay. So you argued implied bias. In the State court. In the State court. And did the State court say that claim was made? No. No, no, no, no. They didn't address it at all. They didn't address it at all. It didn't address it at all. And the other thing --- Excuse me. Was your argument that it was not adjudicated on the merits under some other theory? It was not adjudicated on the merits under some other. All they dealt with--- It was fine adjudicated on the merits as it was raised to the State court, and the State court did not say it was procedurally barred. Right. And what they did, what they dealt with, what everybody dealt with, was whether or not she was dishonest and voir dire, and they held that she wasn't, just as the trial judge did. You know, so it was the magistrate in Sacramento that first raised the issue of implied bias. He didn't talk about whether or not it had been addressed in the State court. The second thing is that, yes, she said I can be impartial, but the whole point of implied bias is that once you get into that realm, people's asseverations--- Well, two questions. First, what was the case that you were talking about earlier with regard to why if they only decide one, if they don't decide an issue that was raised, but they decide another issue? Lewis v. Mayo. It's 391F3rd something or other. Okay. And second of all, the --there was a recent, relatively recent, on-bank case about implied bias, which I don't think you cited. Fields. Fields. Yes. Yes. And at least the overall tone--. There was a dissent. Yes, there was a dissent. But the overall tone of it was that essentially without lying, implied bias is very hard to prove. Well, yes. Pardon me. I don't--. So the two kind of run together is the problem. And that has both procedural consequences here, i.e., by deciding there wasn't any lying were they largely deciding the implied bias question. And the second is, without lying, how could you prevail on the implied bias? Yeah. And what I say is this is an outstanding case. Because she was in there crying, telling her whole story, she got triggered. I mean, it seems to me pretty obvious that she got triggered and that that's a real problem. I mean, it's got to be--. Did she consciously lie? I doubt it, you know. But she was seriously troubled by this. And the better course--. I mean, you know, we've had we've seen other cases where a juror has been excused because of an emotional reaction, and that's been upheld on habeas here. So that's--. I mean, I guess in the end, the troublesome issue for me in this case is the juror I don't want to call it misconduct, but the implied bias. Okay. Thank you. Thank you very much. Thank you to both counsel for a useful argument in a hard case. Ray v. Scrivner is submitted, and we are in recess until tomorrow. All rise.
judges: Goodwin, Berzon, Ikuta